[Civ. No. 6741. Second Appellate District, Division Two.—May 25, 1931.]

NATIONAL BANK OF COMMERCE IN PASADENA (a Corporation), Respondent, v. THOMPSON ADVERTISING COMPANY (a Copartnership) et al., Appellants.

Morin, Newell & Brown and C. C. Hamil, Jr., for appellants.

Waldo, Hinds & Lawrence, G. E. Waldo and J. H. Waldo for Respondent.

CRAIG, J.—The defendants appeal from a judgment rendered in favor of the plaintiff in the superior court of Los Angeles County, upon a promissory note.

Appellant copartnership, consisting of defendants White and Winthrop, was engaged in general printing, advertising, multigraphing and mimeographing business, for which they solicited orders, and furnished stationery, supplies and labor. Respondent purchased stationery and printing from them, and upon the application of Winthrop loaned $500, and $2,000, for which the latter signed promissory notes to the bank, "Robert A. Winthrop. Thompson Adv. Company". An account was opened at the bank by Winthrop in the name of "Thompson Adv. Co., Partnership", and various amounts were withdrawn, totaling $2,063.54, by checks signed by him. Numerous statements rendered by the copartnership for printing and stationery were paid by the bank, which were receipted as follows: "Paid". "Thompson Advertising Company by George Cossitt White". Respondent thereafter notified said company of the amount due upon the notes and requested payment, whereupon appellant White denied knowledge of the account. Following negotiations between the parties and their counsel, White assigned an insurance policy as security for the amount due, and later executed a promissory note in his individual name and that of the company, therefor. The present suit was instituted for collection of the note last mentioned.

The several grounds assigned for reversal of the judgment revolved about the question as to whether or not the note in suit was a valid obligation of the advertising company and of White. It is strenuously insisted that the copartnership was a "trading" and not a general partnership, that Winthrop incurred the indebtedness as an individual, without authority to bind the partnership, and that the latter received no benefit from the original loan; that White gave the final obligation upon advice of counsel only when threatened with suit, and that it was therefore executed under mistake of law, and without consideration. It is not denied that with the exceptions of office rent for one month, and the salary of an assistant, the moneys borrowed were devoted by Winthrop to his personal use. Nor

is it contended by respondent that the bank had been furnished with evidence in writing of his actual authority to bind the partnership. But it dealt with them as partners in all transactions, opened an account in the name of the partnership, received a signature card signed by Winthrop, and directed that he obtain the signature of White, and bills for merchandise were receipted by both partners. Hence, to all intents and purposes they were accepted and treated by the bank as general partners, with equal authority to transact all business in the name and on behalf of the firm. We are not unmindful of the legislative changes in the law of partnership, but prior to such amendments and when these promissory notes were executed, there was no distinction between a trading and a nontrading partnership. Where a partner of a general partnership executed notes in the ordinary course of business, it was held that his associate was bound thereby even though he had no knowledge of their existence. (*Jacobson* v. *Lamb,* 91 Cal. App. 405 [267 Pac. 114].) In the cited case it was said: "In section 2430 [of the Civil Code] are defined the acts which a partner has no implied authority to perform. The execution of negotiable notes is not one of the acts which a partner is by law prohibited from performing on behalf of a general partnership. Section 2431 specifically provides that even acts of a copartner in bad faith towards the other members of a partnership are nevertheless binding on the partnership, in favor of persons who have in good faith parted with value in reliance upon such acts. . . . With the adoption of the code in this state the distinction between trading and nontrading partnerships which has been made in other jurisdictions is unnecessary, for, with the exception of mining partnerships and special partnerships, all partnerships under the laws of the state of California fall within the same class, and the same rules governing the power and authority apply, whether the partnership is engaged in the business of buying and selling merchandise for profit or engaged in any other business." An agreement to divide profits implies an agreement for a corresponding division of losses, unless otherwise expressly stipulated. (Civ. Code, sec. 2400.) Courts do not countenance partnerships which attempt to afford all the advantages of commercial intercourse without corre-

sponding liabilities, and an agreement which contemplates such evasion will be construed and enforced as a general partnership. (*San Joaquin L. & P. Corp.* v. *Costaloupes*, 96 Cal. App. 322 [274 Pac. 84].) However, there is no evidence to which our attention is directed that such was the nature or intention of appellants' agreement, nor that respondent did not part with value in good faith. It follows that appellants were legally bound by the original evidences of indebtedness, and that the basis of this suit constituted a legal obligation for which the respondent parted with a valuable consideration.

The judgment is affirmed.

Works, P. J., and Archbald, J., *pro tem.*, concurred.